UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEVEN D. AUGER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-10280-GAO |
| | ) | |
| KATHLEEN M. DENNEHY, | ) | |
| Commissioner of Corrections, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

For the reasons stated below, (1) plaintiff's Motion to Proceed *in forma pauperis* is allowed, and the filing fee is assessed pursuant to 28 U.S.C. §1915(b); 2) plaintiff's motion for appointed attorney (#3) is denied without prejudice; and 3) plaintiff is directed to show cause, within forty-two (42) days of this Memorandum and Order, why this action should not be dismissed for the reasons stated herein.

BACKGROUND

On February 3, 2005, plaintiff Steven Dominic Auger, Sr., a prisoner at the Souza Baronowski Correctional Center ("SBCC") in Shirley, MA, filed a *pro se* complaint alleging a potpourri of violations by Commissioner Kathleen Dennehy, allegedly conducted by her subordinate prison guards and personnel, with respect to his conditions of confinement. His complaint only names defendant Dennehy, though plaintiff references "et al." in his caption, and refers to unidentified prison guards.

The violations he asserts include, *inter alia*, 1) retaliatory transfer to MCI Cedar Junction in Walpole ("Walpole"), for filing suits in court; 2) failure to protect plaintiff from dangerous inmates; 3) knowingly conspiring to assault and murder him; 4) denying him proper medical attention; 5) denying

him clean underwear for two weeks; 5) denying him a shower for 3 months; 6) torturing him with loud

noises and flashlights in his eyes; 7) denying him vegetarian meals (required for religious purposes); and

8) poisoning his food.

He also alleges that the "Cambridge Court is full of corruption and between there [sic] sneaky

and corrupt tatics [sic], and the security guards at the prison sneaky and corrupt tatics [sic], they have

caused several lawsuits to be dismissed before process of the summons..." (Complaint ¶ 4).  He further

states: "I have been subjected to the most severe cruel treatment by the defendant and her

subordinates, and these psychotic security guards (who torture helpless human beings into trying to kill

themselves)." Id.

More specifically, plaintiff complains that the defendant moved him to a maximum security

prison at Walpole in order "to stop my research, or, stall it, (so they can use psychological techniques

to drive me mad...") Id.  He further claims that while he was at Walpole from January 24, 2002 through

February 21, 2003, there were a number of incidents which threatened his safety.

First, with respect to threats to his safety, he claims a co-inmate called him "super-skinner" and

the guards were expecting this remark to cause him harm.  He then claims to have been threatened by a

co-inmate's "gang of four" and that he was assaulted by an inmate.  He contends that this assault was

"set up by the guards" because "there [sic] bully [sic] wasn't doing to [sic] good."  He further claims the

guards had an inmate attempt to murder him, and covered up the incident by failing to report it to the

District Attorney.  Next, he asserts he received stab wounds and was "sliced up" and received no

medical treatment.  (Complaint, ¶ 5). He claims a guard told him "we don't kill you, we torture you until

you kill yourself, then were [sic] supposed to save you." Id.

2

Second, with respect to hygienic conditions, he claims he was denied clean underclothing for two weeks when he was placed in 10 Block and the guards "allowed the inmates to throw feces and urine and foods and fire at my cell, and they trapt [sic] me in my cell.  I took one shower in three months." Id.

Third, plaintiff also claims that for seven months he was denied religious vegetarian meals while in 10 Block.  He claims the superintendent, "mental health" and the Protestant Pastor knew he could not digest any products made with animal substances." Id.   He also claims they were "doping his food." (Complaint, ¶6).

Fourth, plaintiff claims the guards allowed inmates to bang his cell with plastic cups for two days and nights, that he was placed in a cell with chemical toxins through the lower vent, and the substance crystalized to a black substance which burned the skin.  (Complaint, ¶5).

On February 21, 2003 plaintiff asserts he was placed in protective custody, and was later moved to Bridgewater State Hospital for 40 days.  After that, he was sent to SBCC on February 24, 2004.  He then makes allegations against the guards at SBCC, claiming they are:

> extremely corrupt weirdos.  Most are homosexual, who favor homosexual offender's [sic] and treat headorsexual's [sic] offenders with negative responses to all there [sic] requests.  The guards have a sophisticated method or torturing there [sic] targets into behaving like raging lunatics ....

Complaint, ¶6.

Plaintiff also claims (without stating which guards at which facility), that the guards use the control panels which control the cell doors, and they bang them "loud as a sledge hammer on a metal trash barrell [sic]....over four hundred times a day. " Id.   He claims they use flashlights and "keep them

on your eyes at night every half hour..." Id.


Finally, he claims that the Commissioner is aware of his alleged evidence against the "guards involvement in murdering two inmates and causing other's [sic] to self mutilate themselves and keeping reformatory inmates in maximum prison's (where the law does not allow them to be [sic] for one hour) she has made sure I receive no transfer out of here and has made sure all the guard's [sic] I have named are working in the unit continuously." (Complaint, ¶7).  Plaintiff has not identified any guards allegedly involved in the incidents set forth in the complaint.  He further complains that the Commissioner removed his good-conduct credit,  and claims that two judges "have corrupted themselves to cover this up." Id.

Plaintiff also references actions in the state court, including the Cambridge Court, as well as a matter on appeal (he claims his brief on the above issue was filed February 1, 2005) at the "Appeal Court" docket No. 2004-P-1551.  No further information on his state litigation is provided.

Finally, plaintiff states that he seeks no monetary damages unless he is assigned an attorney who will advise him to do so, and he is not sure what relief he can request.

Accompanying his complaint was an Application to Proceed Without Prepayment of Fees, and a Motion for Appointment of Counsel.


DISCUSSION

I.      Application to Proceed Without Prepayment of Fees

A review of plaintiff's Application to Proceed Without Prepayment of fees demonstrates that

4

plaintiff is without sufficient funds to pay the $150 filing fee[1].  Plaintiff is not employed in the prison,  and

has not been since May 2001.  He has no assets or income except for money from his brother, which is

used to purchase toiletries.    Accordingly,  plaintiff's Application to Proceed *in forma pauperis* is

allowed.  However, although prisoner litigants may file applications for fee waiver under 28 U.S.C.

§1915, they are only excused from having to pay the entire filing fee up-front.  Therefore, based on an

average six month balance of $8.14 (as indicated by the prison account statement), the Court must

assess an initial partial filing fee of $1.63, with periodic installment payments to be made thereafter.  Id.

§1915(b)(1).[2]

      II.       Plaintiff's Complaint is Subject to Screening

Because Auger is a prisoner, he is subject to the screening provisions of the Prison Litigation

Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110

Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and

dismiss prisoner complaints.  See 28 U.S.C. §1915 (proceedings *in forma pauperis*); 28 U.S.C.

§1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed

without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v.

---

[1]The filing fee for civil actions increased from $150.00 to $250.00 effective February 7, 2005.
See Section 307 of The Omnibus Appropriation Act for 2005 which increases the statutory fee
prescribed under 28 U.S.C. 1914(a). Since plaintiff filed this action on February 3, 2005, the $150.00
filing fee is applicable here.

[2]After the assessment of an initial partial filing fee, prisoner litigants are obligated to make
monthly payments equaling 20% of the preceding month's income each time the account exceeds $10
until the statutory filing fee is paid in full.  28 U.S.C. §1915(b)(2).

<u>Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. §1915(e)(2).  Complaints filed i<i>n forma pauperis</i> may be dismissed <i>sua sponte</i> and without notice under §1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  <u>Id.</u>; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

Additionally, 28 U.S.C. §1915A authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  <u>Id</u>.

Even construing his pleadings generously, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), Auger's action is subject to dismissal for the reasons stated below.

III.    <u>Plaintiff's Complaint is Subject to Dismissal</u>

A.  <u>Section 1997e Authorizes the Court to Dismiss</u>
<u>An Action Without Requiring Exhaustion of Remedies</u>

Section 1997e(a) provides that no action shall be brought with respect to "prison conditions" under §1983 by a prisoner "until such administrative remedies as available are exhausted."  42 U.S.C. §1997e(a).  Prison conditions, for purposes of §1997e(a), have been broadly interpreted to include "all inmate suits about prison life."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  Plaintiff's various claims about his health and safety, nutrition, hygiene, and other issues he raises involve  "prison conditions" and

are subject to the exhaustion of remedies requirement[3].  See id.; accord Menina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002).

Moreover, although not expressly sought, the fact that plaintiff may seek injunctive relief is insufficient to overcome the exhaustion requirement.  See Booth v. Churner, 532 U.S. 731, 740 (2001) (a prisoner must exhaust all available administrative processes regardless of the relief offered through those procedures); accord Menina-Claudio,  292 F.3d 31, 35 (1st Cir. 2002)(no futility exception to the exhaustion requirement); cf. Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002) (citation omitted) (although the exhaustion requirement is not jurisdictional, it is mandatory).  The failure to exhaust stands as an adequate grounds to dismiss this action.

However, because a Court is also free to dismiss claims for failure to state a claim under §1997e(c)(2), without first requiring exhaustion of administrative remedies, the plaintiff is advised that his claims are also subject to dismissal for the reasons stated below, and he is directed to demonstrate good cause why they should not be dismissed for the reasons stated herein.  See 42 U.S.C. §1997e(c)(2).

### B.  Plaintiff's complaint fails to comply with Fed. R. Civ. P. 8(a)

As noted above, the Court recognizes that *pro se* complaints must be liberally construed, Haines, 404 U.S. at 520-21.  However, in this case,  even under a generous view, plaintiff's complaint fails to meet even the minimum pleading requirements of Fed. R. Civ. P. 8(a).  Rule 8(a) of the Federal

---

[3]However, the issue of his failure to receive good credit time, which may effect the duration of his sentence, may be raised in a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and the Court will not consider this claim in the civil action context.

Rules of Civil Procedure requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard sets forth a relatively low pleading threshold. Here, plaintiff asserts various bad acts by unknown and unnamed prison guards, medical or other prison personnel, and merely asserts that Defendant Dennehy was aware of this situation. He fails to provide any factual information to support this contention, nor does he provide specific places, dates, or times, when the alleged incidents occurred or when or how defendant became aware of them. Moreover, since he has not named or identified any prison employees specifically involved in the alleged deprivations, no process be served on defendants, a prerequisite for plaintiff to prosecute his claims against specific individuals.

Additionally, plaintiff's assertions of torture, attempted murder, starvation, food poisoning, corruption by officials, which he alleges have occurred in each prison facility to which he was transferred, are unsupported by any credible factual statements which would establish a cognizable cause of action. Such repeated inflammatory recitations by plaintiff may be deemed to be "frivolous" within the meaning of §1915A. See Neitzke, 490 U.S. at 325 (1989) ("[A] complaint ... is frivolous where it lacks an arguable basis either in law or in fact.") ("§ 1915(d)'s term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993) ("A claim is 'frivolous' within the meaning of section 1915(d) when it is 'based on an indisputably meritless legal theory,' or makes 'clearly baseless' factual contentions.'" (quoting Neitzke, 490 U.S. at 327; See also Brown v. Bargery, 207 F.3d 863, 866 (6th Cir. 2000) (a complaint is frivolous "only if the legal theories raised in the complaint are indisputably meritless or if the factual contentions are fantastic or delusional.")

C. <u>There is no vicarious liability of Commissioner Kathleen Dennehy</u>

Even if this Court were to deem the complaint as non-frivolous, plaintiff has failed to set forth

sufficiently, a legally cognizable claim.  In his complaint, plaintiff does not specifically allege the  theory

of liability upon which he relies, but does indicate in the Civil Action Cover Sheet, that the action is an

action for "wrongful imprisonment-torture-attempted murder-food poisoning-threat to murder children

7 and 11-using prison system to torture me-corrupting government officials and judges-and more."

(Civil Cover Sheet, ¶ I.).   As such, the Court will construe his claims liberally as an attempt to state a

civil rights/Eighth Amendment claim under 42 U.S.C. §1983.   In order to state a §1983 claim, a

plaintiff must allege (1) that the conduct complained of was committed by a person acting under color

of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by

the Constitution or laws of the United States.  <u>Romero-Barcelo v. Hernandez-Agosto</u>, 75 F.3d 23, 32

(1st Cir. 1996) (citing <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 998 (1st Cir.

1992)).

In the instant case, plaintiff fails to meet this second prong. To the extent plaintiff's complaint

asserts that Commissioner Dennehy is liable for the actions of the prison guards, or other prison

employees, plaintiff's claims against the defendant  are subject to dismissal, because there is no

*respondeat superior*  liability for supervisors based on actions of their employees.  Liability under

§1983 is direct, not vicarious. <u>Pinto v. Nettleship</u>, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat*

*superior* liability under §1983; liability can only be imposed upon officials who were involved

personally in the deprivation of constitutional rights). <u>see</u> <u>Guzman v. City of Cranston</u>, 812 F.2d 24, 26

(1st Cir. 1987).   Because liability cannot be based solely on an employer-employee relationship with a

tortfeasor, plaintiff's claims against defendant Dennehy are subject to dismissal.  See

Rodriguez-Vazquez v. Cintron-Rodriguez, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001) (dismissing

claims, allegation that defendant was "ultimately responsible for the selection and/or supervision and/or

training and/or discipline of his subordinates" was insufficient).  Moreover,  as noted previously, apart

from the bold assertion that defendant knew what was going on, plaintiff has failed to factually state a

§1983 claim against the defendant based on direct conduct.

> D.   Plaintiff cannot re-litigate claims asserted in state court.

While not entirely clear, plaintiff makes reference in his complaint to suits he has filed in state

court, which appear to relate to matters he now is attempting to raise in this forum.  He also indicates

that those claims have been dismissed by the state, thus leading to his claims of corrupt judicial officials.

(See Complaint, ¶4).  To the extent that his prison condition claims have been asserted and finally

dismissed on the merits, this Court lacks subject matter jurisdiction to review those claims in this Court,

under the Rooker-Feldman doctrine.  Conversely, to the extent that those claims are still pending in the

state court, this Court must abstain from considering those claims.

> 1.   Rooker-Feldman Doctrine.

It is well settled that lower federal courts are without subject-matter jurisdiction to sit in direct

review of state court decisions pursuant to the Rooker-Feldman[4] doctrine.  See, e.g., Hill v. Town of

Conway, 193 F.3d 33, 34 (1st Cir. 1999) (citing Wang v. New Hampshire Bd. of Registration, 55

---

[4]The Rooker-Feldman doctrine is a distillation of two Supreme Court decisions:  Rooker v.
Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460
U.S. 462 (1983).  See Hill, 193 F.3d at n. 1 (describing history of doctrine).

F.3d 698, 703 (1st Cir. 1995)) (describing <u>Rooker-Feldman</u> doctrine)).  The jurisdiction to review state court decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court.  <u>See</u> <u>Feldman</u>, 460 U.S. at 482-86; <u>Rooker</u>, 263 U.S. at 415-16.

The <u>Rooker-Feldman</u> doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision.  <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 286 (1983) ("Federal district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.") (internal quotation omitted); <u>accord</u> <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005-1006 (1994) (<u>Rooker-Feldman</u> doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights); <u>Mandel v. Town of Orleans</u>, 326 F.3d 267, (1st Cir. 2003) (<u>Rooker-Feldman</u> doctrine precludes a lower federal court from entertaining a proceeding to reverse or modify a state-court judgment or decree to which the assailant is a party).  Thus, to the extent that plaintiff seeks review or vacation of the state court rulings, his claims are subject to dismissal.  <u>Hill</u>, 193 F.3d 33 at 34.  Here, plaintiff has not provided sufficient information to show that the claims he presents in this action are not "inextricably intertwined" with the state court proceedings. Thus, any decision in this case might effectively vacate the holdings in those courts.

Accordingly, as part of the show cause response, plaintiff is directed to demonstrate that the issues he presents in this action are separate and distinct from those issues raised and considered in the

11

state court.  He is also directed to provide sufficient information for this Court to determine the status of any pending, or any dismissed, civil action(s) in any state court.

2.  Abstention.

Alternatively, to the extent that Plaintiff is complaining about matters which have not been fully resolved and which are pending in the state court (he indicates he has an appeal pending), the Court must abstain from reviewing these claims.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that federal courts are required to abstain from issuing federal court injunctions in situations where, absent bad faith, harassment, or a patently invalid state statute, there is a pending state criminal proceeding.  Younger, 401 U.S. at 54.  The Younger doctrine has been extended to apply to proceedings that are closely related to criminal proceedings, including certain state enforcement and administrative proceedings and matters involving important public interests.  See, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592, 594 (1975) (nuisance); Juidice v. Vail, 430 U.S. 327, 334-335 (1977) (civil contempt); Trainor v. Hernandez, 431 U.S. 434, 444-447 (1977) (attempt by state to recover fraudulently-obtained welfare benefits); Moore v. Sims, 442 U.S. 415, 423-426 (attempt by state to obtain child custody); Ohio Civil Rights Comm'n. v. Dayton Christian Schs., Inc., 477 U.S. 619, 627-629 (1986) (state administrative proceedings involving important state interests).

Thus, where Plaintiff has not shown he is without remedies in the state court with respect to the same matters he is now trying to raise in this Court, this matter is subject to dismissal.     Accordingly, as noted above, plaintiff shall, as part of his show cause response, provide sufficient information on the status of any pending civil action in any state court, which touches upon the issues he presents in this

action.

    IV.  <u>Motion for Appointment of Counsel</u>.

    Along with his complaint, plaintiff has also filed a motion for appointment of counsel.  Under 28 U.S.C. §1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel."  28 U.S.C. §1915(e)(1).  However, a civil plaintiff lacks a constitutional right to free counsel. <u>DesRosiers v. Moran</u>, 949 F. 2d 15, 23 (1st Cir. 1991)(citations omitted).

    In order to qualify for appointment of counsel,  a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  <u>Id.</u>  In determining whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself.  <u>Id.</u> at 24 (citations omitted).

    In accordance with this standard, plaintiff's request for counsel is denied, without prejudice. While plaintiff's ability to pay for counsel raises a genuine issue, the plaintiff has failed to demonstrate that this case presents the kind of exceptional circumstances warranting appointment of counsel, especially in light of the dubious merits of the case as set forth in this Memorandum and Order, as well as the lack of complexity of the legal issues involved.  <u>See</u> <u>id.</u>

<u>CONCLUSION</u>

    Based on the foregoing, it is hereby ORDERED:

1.    Plaintiff's Motion to Proceed *in forma pauperis* is allowed and the filing fee is assessed pursuant to 28 U.S.C. §1915(b);

13

2.      Plaintiff's motion for appointment of counsel is denied without prejudice; and

3.      Plaintiff shall, within forty-two (42) days, show cause in writing why this action should not be dismissed in its entirety, for the reasons stated herein, and shall provide the requisite information on pending and dismissed matters in the state court; failure to do so shall result in dismissal of this action.

SO ORDERED.

Dated at Boston, Massachusetts, this 24th day of  March, 2005.

 /s/ George A. O'Toole                           
GEORGE A. O'TOOLE
UNITED STATES DISTRICT JUDGE

14